| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>CHRISTOPHER R. BARCLAY, chapter 7 trustee | **DEFENDANTS**<br>3C ADVISORS & ASSOCIATES, INC., a corporation; STEPHEN C. JONES, an individual; DAVID A. PROLMAN, an individual; and DOES 1-50, inclusive |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Finlayson Toffer Roosevelt & Lilly LLP<br>15615 Alton Parkway, Suite 250<br>Irvine, CA 92618<br>Phone: 949.759.3810 / Fax: 949.759.3812 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☑ Trustee | **PARTY** (Check One Box Only)<br>☑ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint for professional negligence; breach of fiduciary duty and unjust enrichment

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11 - Recovery of money/property - § 542 turnover of property
☐ 12 - Recovery of money/property - § 547 preference
☐ 13 - Recovery of money/property - § 548 fraudulent transfer
☐ 14 - Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21 - Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31 - Approval of sale of property of estate and of co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41 - Objection / revocation of discharge - § 727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51 - Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66 - Dischargeability - § 523(a)(1),(14),(14A) priority tax claims
☐ 62 - Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
☐ 67 - Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 - Dischargeability - § 523(a)(5), domestic support
☐ 68 - Dischargeability - § 523(a)(6), willful and malicious injury
☐ 63 - Dischargeability - § 523(a)(8), student loan
☐ 64 - Dischargeability - § 523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65 - Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71 - Injunctive relief - reinstatement of stay
☐ 72 - Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81 - Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91 - Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01 - Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa et.seq.
☑ 02 - Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☑ Check if a jury trial is demanded in complaint | Demand $ Approximately $18 million |

Other Relief Sought

B1040

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>SULLIVAN INTERNATIONAL GROUP, INC. | | BANKRUPTCY CASE NO.<br>15-02281-LT7 |
| DISTRICT IN WHICH CASE IS PENDING<br>Southern | DIVISIONAL OFFICE | NAME OF JUDGE<br>Hon. Laura S. Taylor |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Jesse S. Finlayson | | |
| DATE<br>February 16, 2017 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Jesse S. Finlayson | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

JESSE S. FINLAYSON, SBN 179443
*jfinlayson@ftrlfirm.com*
MATTHEW E. LILLY, SBN 218143
*mlilly@ftrlfirm.com*
**FINLAYSON TOFFER ROOSEVELT & LILLY LLP**
15615 Alton Parkway, Suite 250
Irvine, CA 92618
Telephone:  949.759.3810
Facsimile:   949.759.3812

Attorneys for Christopher R. Barclay,
Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 15-02281-LT7 |
| SULLIVAN INTERNATIONAL GROUP, INC., | Chapter 7 |
| Debtor. | Adv. Proc. No. |
| | **COMPLAINT FOR:** |
| CHRISTOPHER R. BARCLAY, chapter 7 trustee, | **(1)  PROFESSIONAL NEGLIGENCE** |
| Plaintiff, | **(2)  BREACH OF FIDUCIARY DUTY** |
| v. | **(3)  UNJUST ENRICHMENT** |
| 3C ADVISORS & ASSOCIATES, INC., a corporation; STEPHEN C. JONES, an individual; DAVID A. PROLMAN, an individual; and DOES 1 through 50, inclusive, | **JURY DEMAND** |
| Defendants. | |

Plaintiff Christopher R. Barclay (the "Trustee"), the chapter 7 trustee for the bankruptcy estate of Sullivan International Group, Inc. (the "Debtor"), files this Complaint against Defendants 3C Advisors & Associates, Inc. ("3C Advisors"), Stephen C. Jones ("Jones"), David A. Prolman ("Prolman"), and Does 1 through 50 (collectively, the "Defendants") and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1), 157(c)(1), and 1334(b). This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (C), and (E), or in the alternative, is related to the Debtor's bankruptcy proceeding pending before this Court under 28 U.S.C. § 157(c)(1). This adversary proceeding arises under title 11 of the United States Code (the "Bankruptcy Code") and arises in a case under the Bankruptcy Code pending before this Court.

2. Venue of this adversary proceeding is properly before this Court pursuant to 28 U.S.C. § 1409(a).

3. This Complaint initiates an adversary proceeding within the meaning of Federal Rule of Bankruptcy Procedure 7001.

4. Pursuant to Local Bankruptcy Rule 7008-1, the Trustee consents to entry of final orders or judgment by the bankruptcy judge if any matters are determined to be core. Pursuant to Local Bankruptcy Rule 7008-2, the Trustee hereby demands a jury trial in this adversary proceeding.

## PROCEDURAL BACKGROUND AND PARTIES

5. On April 6, 2015 (the "Petition Date"), the Debtor commenced a case under chapter 11 of the Bankruptcy Code with this Court. On September 11, 2015 (the "Conversion Date"), the Bankruptcy Court entered an order converting the Debtor's case from chapter 11 to chapter 7.

6. The Trustee is the duly authorized representative of the Debtor's bankruptcy estate pursuant to section 704 of the Bankruptcy Code.

1

7. The Trustee is informed and believes, and on that basis alleges, that the Debtor is a corporation organized and existing under the laws of the State of California, with its principal place of business located in San Diego, California.

8. The Trustee is informed and believes, and on that basis alleges, that defendant 3C Advisors is a corporation organized and existing under the laws of the State of California, with its principal place of business located in San Diego, California.

9. The Trustee is informed and believes, and on that basis alleges, that defendant Jones is an individual residing in San Diego County, California. The Trustee is further informed and believes, and on that basis alleges, that Jones is the Managing Director and Chief Executive Officer of 3C Advisors.

10. The Trustee is informed and believes, and on that basis alleges, that defendant Prolman is an individual residing in San Diego County, California. The Trustee is further informed and believes, and on that basis alleges, that at all relevant times, Prolman was the head of the Corporate Advisory Service Practice at 3C Advisors.

11. The Trustee is informed and believes, and on that basis alleges, that at all times herein mentioned each Defendant was acting as the agent, employee, principal, officer, partner, joint venturer, servant, directors, or other representative of one or more of the remaining Defendants and, in committing the acts and/or omissions mentioned herein, was acting within the course and scope of such employment, agency, partnership, joint venture or other relationship, and with the knowledge, consent, authorization, and ratification of the remaining Defendants.

12. The Trustee is unaware of the true names and capacities of the Defendants sued herein as Does 1 through 50, inclusive, and therefore sues said Doe Defendants by such fictitious names. The Trustee is informed and believes, and on that basis alleges, that each of the Doe Defendants are legally responsible in some manner for the events and happenings alleged herein, and that the damages alleged herein were

proximately caused by their conduct. The Trustee will seek leave of court to amend this Complaint to allege the Doe Defendants' true names and capacities when ascertained.

## GENERAL ALLEGATIONS

### A. The Debtor's Business

13. The Trustee is informed and believes, and on that basis alleges, that before the Conversion Date, the Debtor was in the business of providing environmental consulting and engineering services and construction management to public and private sector clients, including the Environmental Protection Agency and Department of Defense.

14. The Trustee is informed and believes, and on that basis alleges, that as of late 2014, the Debtor was in financial distress. More specifically, the Trustee is informed and believes, and on that basis alleges, that the Debtor had defaulted on payments owed to several vendors and subcontractors, and had entered into a series of forbearance agreements with Bridge Bank N.A. ("Bridge Bank") due to the Debtor's inability to make payments required under a financing agreement between the Debtor and Bridge Bank. The Trustee is further informed and believes, and on that basis alleges, that the Debtor's debt to Bridge Bank was secured by substantially all of the Debtor's assets, including cash.

### B. The Debtor Engages 3C Advisors

15. The Trustee is informed and believes, and on that basis alleges, that the Debtor engaged 3C Advisors to assist the company to restructure its liabilities to provide operating financial liquidity, either by finding a replacement lender for Bridge Bank, and/or introducing new sources of capital (debt or equity).

16. The Trustee is informed and believes, and on that basis alleges, that the Debtor and 3C Advisors entered into a written agreement on December 8, 2014 through which the Debtor retained 3C Advisors to provide certain financial and consulting services (the "Retainer Agreement"). Among the services that 3C Advisors

3

agreed to provide were assistance with the "introduction of new capital" and obtaining "as much new operating financial liquidity as possible." The Retainer Agreement also provided specifically that Jones and Prolman would be the primary 3C Advisors personnel to provide services to the Debtor.

17. The Trustee is informed and believes, and on that basis alleges, that the Retainer Agreement provided that the Debtor would compensate 3C Advisors in two primary ways. First, the Debtor agreed to pay 3C Advisors a $15,000 "Renewable Retainer" and to pay a $250 per hour consulting fee for services provided by 3C Advisors' personnel, including Jones and Prolman. Second, the Debtor agreed to pay a "Consulting Performance Fee" to 3C Advisors which was calculated as a percentage of the capital raised, with greater potential payouts for equity investments (4%) than for debt transactions (2%).

18. The Trustee is informed and believes, and on that basis alleges, that the fee structure set forth in the Retainer Agreement is similar to the fee structure charged by 3C Advisors to its other clients. The Trustee is further informed and believes, and on that basis alleges, that at the time that the Debtor executed the Retainer Agreement, 3C Advisors held itself out as a company that provided, among other things, capital advisory services to its clients. Accordingly, at all relevant times, Defendants were "brokers" that were required to be registered with the Securities and Exchange Commission ("SEC") pursuant to Section 15(b) of the Securities Exchange Act of 1934.

**C.    The SEC Opens An Investigation Against Defendants**

19. The Trustee is informed and believes, and on that basis alleges, that in October 2014 – two months before executing the Retainer Agreement with the Debtor – Defendants received a subpoena from the SEC, which informed Defendants that the SEC was investigating them for violating securities laws by providing broker services without necessary registrations/licenses.

4

20. The Trustee is informed and believes, and on that basis alleges, that Defendants did not disclose the SEC investigation to the Debtor or the fact that they were unregistered/unlicensed to provide the broker/capital advisory services set forth in the Retainer Agreement.

### D. Defendants' Prepetition Negligence

21. Defendants failed in their efforts to assist the Debtor to obtain new sources of capital or to otherwise improve the company's financial situation. Quite the opposite, the Trustee is informed and believes, and based thereon alleges, that the Debtor's financial condition steadily worsened in the months following the engagement of Defendants, ultimately leading to the collapse of the Debtor's business.

22. On April 13, 2015, Jones filed a declaration with this Court in which he estimated, under penalty of perjury, that the value of the Debtor's assets as of November 30, 2014, including goodwill and other intangible assets, exceeded $18 million. Jones additionally estimated that the value of the Debtor's assets excluding goodwill and other intangible assets exceeded $10 million. *See* Declaration of Stephen C. Jones [Dkt. No. 16-2].

23. The Trustee is informed and believes, and on that basis alleges, that less than four months after the Debtor engaged Defendants, the Debtor had defaulted on payments to vendors, subcontractors, and Bridge Bank, and was forced to file for bankruptcy protection. The Trustee is further informed and believes, and on that basis alleges, that the Debtor's financial decline between the period when it engaged Defendants and the Petition Date was caused at least in part by negligent professional advice and services provided by Defendants, including reviewing the Debtor's assets and liabilities, negotiating with creditors, developing a 2015 business plan, identifying potential purchasers of the Debtor's assets, and seeking potential sources of new capital.

24. The Trustee is informed and believes, and on that basis alleges, that Defendants compounded the Debtor's financial difficulties by advising the Debtor to

5

pursue a course of action that aggravated the need to file for bankruptcy protection and also failing to advise the Debtor to plan accordingly.  By way of example, the Trustee is further informed and believes, and on that basis alleges, that Defendants did not competently negotiate an agreement for use of cash collateral with Bridge Bank, or advise the Debtor to do so, sufficiently in advance of the Petition Date such that an agreement could be in place at the time of filing for bankruptcy protection or shortly thereafter.  The Trustee is further informed and believes, and on that basis alleges, that without an agreement for use of cash collateral in place, filing for chapter 11 bankruptcy protection severely limited the Debtor's ability to operate its business as a going concern.

25.   The Trustee is informed and believes, and on that basis alleges, that the lack of an agreement for use of cash collateral with Bridge Bank on the Petition Date exacerbated the Debtor's liquidity problems and materially contributed to those problems continuing into the chapter 11 phase of the bankruptcy proceeding.

26.   The Trustee is informed and believes, and on that basis alleges, that the Debtor paid a total of $209,022.25 to Defendants before the Petition Date, $44,500 of which was held by 3C Advisors as a postpetition retainer to pay for services provided by Defendants during the chapter 11 phase of the Debtor's bankruptcy proceeding.  As such, the Debtor paid $164,522.25 for prepetition services.

### E.   Defendants' Postpetition Negligence

27.   The Trustee is informed and believes, and on that basis alleges, that by virtue of the Debtor's commencement of a chapter 11 bankruptcy proceeding, Defendants were able to continue providing services to the Debtor after the Petition Date, and to charge the Debtor for those services.  To that end, on May 5, 2015, the Debtor filed an Ex Parte Application for Authority to Employ 3C Advisors & Associates, Inc. as Debtor's Financial Advisor with the Bankruptcy Court [Dkt. No. 82], supported by a Declaration from Jones [Dkt. No. 82-1].  Defendants did not inform the Bankruptcy Court that they were unregistered/unlicensed to provide the

broker/capital advisory services that they proposed to provide to the chapter 11 Debtor, or that they were the subjects of an active investigation by the SEC.

28. The Court granted the Debtor's Ex Parte Application on May 29, 2015, and authorized the Debtor to employ 3C Advisors as its financial advisor, subject to the terms contained in the Court's approval order [Dkt. No. 158]. Among the terms imposed by the Bankruptcy Court was to "exclude the indemnification, contribution, and limitation of liability provisions" contained in the Debtor and 3C Advisors' proposed supplemental engagement agreement (which superseded the Retainer Agreement).

29. The Trustee is informed and believes, and on that basis alleges, that the chapter 11 phase of the Debtor's bankruptcy proceeding was a complete failure and resulted in millions of dollars in administrative expense claims that could have been avoided had the Debtor ceased operations and liquidated at the outset. The Trustee is further informed and believes, and on that basis alleges, that the Debtor – under the guidance of Defendants as its financial advisors – ran out of cash a mere ten weeks after filing for chapter 11 bankruptcy protection (and after Jones filed the above-referenced declaration stating his belief that the Debtor had $18 million in assets).

30. The Debtor incurred approximately $2,386,000.00 in administrative expense claims during the chapter 11 phase of its bankruptcy proceeding. Those expense claims included $208,633.50 charged by 3C Advisors. The Trustee is informed and believes, and on that basis alleges, that the vast majority of the costs incurred by the Debtor in the chapter 11 phase of its bankruptcy proceeding would have been avoided had Defendants advised the Debtor to cease operations and liquidate instead of advising the Debtor to file a chapter 11 case in order to continue operating and had the Debtor followed that advice.

**F.    The Court Converts The Chapter 11 Bankruptcy Case To Chapter 7**

31. On August 21, 2015, the Debtor filed an Emergency Motion for Conversion to Chapter 7 [Dkt. No. 410]. In its Motion, the Debtor represented that its

7

business was inoperable, that it was administratively insolvent, and that it was unable to fund basic expenses such as payroll and rent.

32. The Trustee is informed and believes, and on that basis alleges, that the net value of the Debtor as of August 21, 2015 was essentially zero.

33. The Court granted the Debtor's Motion and converted the chapter 11 bankruptcy case to chapter 7 case on September 11, 2015 [Dkt. No. 469].

### G. Damages Suffered By The Debtor

34. The Trustee is informed and believes, and on that basis alleges, that Defendants materially contributed to the losses suffered by the Debtor, both prepetition and postpetition, in at least one of two ways.

35. First, if the Debtor was a viable business that could either be salvaged or sold as a going concern at the time that it first engaged 3C Advisors in December 2014, then Defendants, through the negligent provision of services and financial advice that they were unqualified and unregistered/unlicensed to provide, materially contributed to the loss of substantially all of the company's asset value (with assets estimated at $18 million by Jones), and the ultimate collapse of the company's business, in just eight months.

36. In the alternative, if the Debtor was not a viable business that could be salvaged or sold as a going concern at the time that it first engaged 3C Advisors in December 2014, then Defendants should have recognized that state of affairs early in the engagement, and advised the Debtor to liquidate. But by advising the Debtor to continue operations and chase other potential financing options and to file for chapter 11 bankruptcy protection, Defendants caused the Debtor to incur approximately $2,386,000.00 in unnecessary administrative expense claims during the chapter 11 phase of the bankruptcy proceeding, including $208,633.50 charged by 3C Advisors.

37. In addition to the above-described damages, the Debtor paid $164,522.25 to Defendants for the provision of prepetition services that Defendants were

8

unregistered, unlicensed, and unqualified to provide, and which ultimately had no value to the Debtor.

### H.    The SEC's Enforcement Action Against Defendants

38.    The SEC commenced an enforcement action against Defendants on January 27, 2016.  In its Order Instituting Administrative Proceedings, the SEC alleged that "Jones and Prolman through their company 3C violated Section 15(a) of the Exchange Act by engaging in unregistered broker activity."  In support of its allegations, the SEC described five separate engagement agreements between 3C Advisors and other clients that are, in substance, virtually identical to the engagement agreements between 3C Advisors and the Debtor, both in terms of services provided by 3C Advisors and compensation to be paid by its clients.

39.    The SEC also criticized Defendants for their lack of remediation efforts after learning of the SEC's investigation:

> In October 2014, after receiving a subpoena from the Commission, 3C removed references to its capital advisory services from its website. However, after October 2014, the firm took on another capital advisory engagement raising capital for a distressed company.

40.    The Trustee is informed and believes, and on that basis alleges, that the "distressed company" cited by the SEC was the Debtor.

41.    The SEC entered Orders Making Factual Findings and Imposing Remedial Sanctions and a Cease-and-Desist Order against each Defendant (the "SEC Orders") in September/December 2016 (September 19, 2016 for Prolman, and December 19, 2016 for Jones and 3C Advisors).  In the SEC Orders, the SEC held that 3C Advisors "willfully violated Section 15(a) of the Exchange Act, which prohibits a broker from making use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of securities without being registered as broker or associated with a registered broker."  With respect to Jones and Prolman, the SEC held that each of them "willfully aided and abetted and caused 3C's violation of Section 15(a) of the Exchange Act."

9

42. Through the SEC Orders, the SEC imposed $136,961.03 in monetary sanctions and disgorgement of profits against Defendants, collectively.

## FIRST CLAIM FOR RELIEF

### (Professional Negligence – All Defendants)

43. The Trustee incorporates by reference the allegations of paragraphs 1 through 42, inclusive, as if fully set forth herein.

44. Defendants, as financial advisors, held themselves out as professionals with particular expertise and skill in the areas of providing financial and operational advice to companies, and in the raising of capital on behalf of their clients. In addition, the Debtor retained Defendants to provide these and similar services to the Debtor. As such, Defendants owed the Debtor the duty to use such skill, prudence, and diligence as other members of their possession commonly possess.

45. The Trustee is informed and believes, and on that basis alleges, that Defendants breached their duty of care by the actions herein alleged, including, without limitation, by (a) failing to disclose that they were not registered/licensed or qualified to provide the services that the Debtor retained them to provide, (b) failing to disclose that they were under an active investigation by the SEC, (c) failing to cause the Debtor to realize any value, either as a going concern or through an asset sale, from the assets that it held at the time of Defendants' engagement, which Jones estimated at more than $18 million, (d) causing the Debtor's asset value to plummet to virtually worthless in the span of eight months, (e) causing the Debtor to file for chapter 11 bankruptcy protection and incur approximately $2,386,000.00 in administrative expenses during the chapter 11 phase of the Debtor's bankruptcy proceeding, (f) failing to advise the Debtor to properly plan for a chapter 11 bankruptcy filing, including through negotiating an agreement for use of cash collateral with Bridge Bank, and (g) profiting from their negligence in the form of $164,522.25 paid to them for prepetition services and causing the Debtor to incur $208,633.50 in additional administrative

10

expenses charged by 3C Advisors that could have been avoided had Defendants not advised Debtor to continue operations.

46. The Trustee is informed and believes, and on that basis alleges, that Defendants' negligent acts were the actual and proximate cause of injuries to the Debtor, including, without limitation, (a) the ultimate collapse of the Debtor's business and the loss of the assets held by the Debtor at the time that it retained Defendants, estimated by Jones to exceed $18 million, (b) $164,522.25 in fees paid to Defendants by the Debtor for prepetition services, (c) $2,386,000.00 in chapter 11 administrative expense claims, including $208,633.50 charged by 3C Advisors, arising from the continued operation of the Debtor's business in the failed chapter 11 case.

## SECOND CLAIM FOR RELIEF

### (Breach of Fiduciary Duty – All Defendants)

47. The Trustee incorporates by reference the allegations of paragraphs 1 through 46, inclusive, as if fully set forth herein.

48. The Trustee is informed and believes, and on that basis alleges, that a confidential relationship existed between the Debtor and Defendants such that Defendants owed a fiduciary duty to the Debtor.

49. The Trustee is informed and believes, and on that basis alleges, that Defendants breached their respective fiduciary duties owed to the Debtor as herein alleged.

50. The Trustee is informed and believes, and on that basis alleges, that the Debtor suffered damages as a result of Defendants' breaches of their fiduciary duties as herein alleged.

51. The Trustee is informed and believes, and on that basis alleges, that Defendants acted with oppression, fraud, and/or malice towards the Debtor in taking the actions alleged herein, thus entitling the Trustee to recover punitive damages pursuant to California Civil Code Section 3294.

## SECOND CLAIM FOR RELIEF

### (Unjust Enrichment – All Defendants)

52. The Trustee incorporates by reference the allegations of paragraphs 1 through 51, inclusive, as if fully set forth herein.

53. Defendants derived compensation, fees, and other benefits from the Debtor and were otherwise unjustly enriched during the time in which the wrongful practices occurred, to the detriment of the Debtor. Defendants profited by engaging in the wrongful conduct set forth in the Complaint above.

54. Defendants' enrichment is directly and causally related to the detriment of the Debtor.

55. These benefits were accepted by Defendants under such circumstances that it would be inequitable for them to be retained without payment.

## REQUEST FOR JUDGMENT

The Trustee prays for judgment as follows:

A. Awarding compensatory damages against all Defendants, jointly and severally, in an amount to be proven at trial;

B. Awarding punitive damages at the maximum amount permitted by law;

C. Awarding pre-judgment interest, as well as reasonable attorneys' fees and other costs, to the full extent allowed by law; and

D. Awarding such other relief as this Court may deem just and proper.

DATED: February 16, 2017       FINLAYSON TOFFER
                               ROOSEVELT & LILLY LLP


                               By:      */s/ Jesse F. Finlayson*
                                              Jesse S. Finlayson

                               Attorneys for Christopher R. Barclay,
                               Chapter 7 Trustee

12